IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **ROYALE LEE STEWART, #1039512,** : | |
| : | |
| Petitioner, : | |
| : | |
| v. : | Civil Action No. 2:13cv388 |
| : | |
| **HAROLD W. CLARKE, Director,** : | |
| **Virginia Department of Corrections,** : | |
| : | |
| Respondent. : | |

## REPORT AND RECOMMENDATION

Petitioner, Royale Lee Stewart, a Virginia inmate, was convicted in 1997 of capital murder, attempted robbery and two counts of use of a firearm in the commission of a felony. He filed this habeas petition under 28 U.S.C. § 2254, seeking resentencing on the capital murder charge for which he is currently serving a life sentence without parole. Because Stewart was 16 at the time of the offense, his petition argues that the United States Supreme Court decision in Miller v. Alabama, 132 S. Ct. 2455 (2012), which prohibits juveniles from receiving a mandatory sentence of life without parole, renders his life sentence unconstitutional. After reviewing Stewart's detailed petition, the Respondent's Motion to Dismiss, and the cases cited by each, this Report concludes that Stewart's habeas petition is untimely, and that the rule announced in Miller does not apply retroactively to cases on collateral review. Accordingly, the undersigned recommends the Court dismiss the petition.

1

# I. STATEMENT OF THE CASE

Stewart was convicted following a jury trial in the City of Norfolk in the shooting death of Kevin Gallegos during an armed robbery. In accordance with the jury's verdict, he was sentenced to life in prison on the capital murder charge. He appealed his conviction to the Court of Appeals which denied his appeal on November 2, 1998. The Supreme Court of Virginia refused his appeal on April 8, 1999. Stewart then filed a number of unsuccessful collateral challenges to his conviction, including three state habeas petitions and two prior federal petitions in this Court. On June 10, 2013, the Fourth Circuit granted Stewart leave to file a successive petition to assert the claims raised here, namely, that his mandatory life sentence on the capital murder charge is unconstitutional under the Supreme Court's decision in Miller.

Although granted permission to file the successive petition on June 10, 2013, Stewart's petition was not received by this Court until July 8, 2013. The petition, which Stewart initially filed pro sé, was accompanied by a typewritten cover letter. Both the petition and cover letter have a typewritten date of June 23, 2013, however, both the typewritten dates were lined out and replaced with the handwritten date of July 2, 2013. In addition, Stewart certified service of the petition, completing and signing the certificate before a Notary Public with the date July 2, 2013. (ECF No. 1 at 10). Accordingly, July 2, 2013 is the earliest possible date Stewart could have delivered the petition to prison authorities for mailing. See Houston v. Lack, 487 U.S. 266 (1988). On August 7, 2013, Stewart's counsel entered an appearance on his behalf, and on August 8, 2013, counsel filed a more comprehensive Amended Petition detailing his arguments. The Amended Petition filed by counsel states that Stewart's claims were brought within one year of the date of the Supreme Court's decision in Miller, which was issued on June 25, 2012. (ECF No. 4 at 9).

The Respondent filed a Rule 5 Answer and Motion to Dismiss contending that Stewart's petition was time-barred on the basis that Stewart filed it on July 2, 2013, more than one year after the new rule was announced in Miller. In addition, Respondent argues that Stewart's claims were not properly exhausted and that the rule set forth in Miller does not apply retroactively on collateral review. The Motion to Dismiss was served on Stewart's counsel, but neither Stewart nor his counsel responded to the motion and the time for responding has now expired.

## II. ANALYSIS

**A. Stewart's petition was filed more than one year after the United States Supreme Court issued its decision in Miller and is therefore time-barred.**

The provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) establish a one-year limitation period for prisoners seeking federal habeas relief. Under 28 U.S.C. § 2244(d)(1) a district court is required to dismiss any petition for writ of habeas corpus filed more than one year after the latest of: (i) the date judgment becomes final; (ii) any state-created impediment to filing a petition is removed; (iii) the United States Supreme Court recognizes the constitutional right asserted; or (iv) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A) – (D). The time period during which State post-conviction or other collateral review is pending tolls the limitation period. 28 U.S.C. § 2244(d)(2). In order for tolling to occur, an application for review must be "properly filed." Id. "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (deciding that properly filed includes timely filing).

Here, Stewart's conviction became final more than ten years ago, but he has asserted the right to proceed on the basis that the Supreme Court's decision in Miller announced a new constitutional right which he argues should be made retroactively applicable to cases on collateral review. 28 U.S.C. § 2244(d)(1)(C). As Respondent points out, however, even if Miller did announce a retroactively applicable new constitutional right, Stewart was still required to file his petition within one year of the date the new rule was announced. The Court's decision was released on June 25, 2012. As a result, Stewart's petition, filed at the earliest on July 2, 2013, is time barred. Accordingly, the Court may not consider Stewart's habeas petition unless there is some basis to equitably toll the limitations period. See Holland v. Florida, 560 U.S. 631, 634 (2010) ("[T]he timeliness provision in the federal habeas corpus statute is subject to equitable tolling.").

A petitioner is entitled to equitable tolling only if it is shown: (1) that petitioner has been diligently pursuing his rights; and (2) that extraordinary circumstances stood in the way of timely filing. Id. at 649. Here, Stewart has not articulated any basis to equitably toll the limitations period. Although Stewart timely commenced the process to file by moving the Fourth Circuit for permission to file a successive petition, he waited eleven months to do so, filing his request with the Fourth Circuit on May 24, 2013. Thus, it does not appear that Stewart diligently pursued his rights.

This preliminary filing did not toll the running of the one-year limitation period, which then only had one month remaining. Fierro v. Cockrell, 294 F.3d 674, 680 (5th Cir. 2002) (motion for authorization to file successive petition does not itself initiate habeas proceedings). But the Fourth Circuit promptly ruled, granting Stewart permission to file the petition only two weeks after his request on June 10, and still more than two weeks before the limitations period

4

expired. In fact, it appears Stewart's petition was prepared and dated June 23, 2013, but he neglected to sign and mail it until July 2, 2013. (ECF No. 1 at 1,10). Although given an opportunity to respond to the Respondent's allegations of untimeliness, Stewart has failed to offer any explanation for the delay. Finally, the undersigned's review of the record has not disclosed any facts which would entitle Stewart to equitable tolling. Accordingly, his habeas petition is time-barred regardless of the retroactive application of Miller and should be dismissed.

B.   **The Rule in Miller v. Alabama is not retroactively applicable to cases on collateral review.**

Even if Stewart's claim had been filed within a year of the Miller decision, it would only be timely if the decision announced a new rule of constitutional law "made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). As most courts examining the issue have concluded, the undersigned finds Miller does not apply retroactively.

Respondent concedes that Miller announced a new rule of constitutional law, but for it to apply retroactively, the rule must fit within the exceptions to non-retroactivity described in Teague v. Lane, 489 U.S. 288 (1989). The non-retroactivity principle in Teague "acts as a limitation on the power of federal courts to grant 'habeas corpus relief . . . to state prisoner[s].'" Beard v. Banks, 542 U.S. 406, 412, (2004) (quoting Caspari v. Bohlen, 510 U.S. 383, 389 (1994)). It protects the state's interest in finality of judgment and prevents the continuous marshalling of state resources to keep in prison those "defendants whose trials and appeals conformed to then-existing constitutional standards." Id. at 413. As a result, whenever the state raises Teague as a bar to federal habeas review, the district court must apply it.

The first <u>Teague</u> exception is for substantive rules which generally fall into two categories; those which proscribe certain punishments for a class of defendants as a result of their status or offense, and those which place certain conduct beyond the state's power to punish. <u>Beard</u>, 542 U.S. at 416. The second <u>Teague</u> exception applies to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." <u>Id.</u> at 417 (quoting <u>O'Dell v. Netherland</u>, 521 U.S. 151, 157 (1997)). As most Federal Courts examining the issue have concluded, neither exception applies to the rule announced in <u>Miller</u>.

**1.  The rule announced in <u>Miller</u> altered the procedure by which the state may sentence juveniles to life in prison without parole for a non-homicide offense.**

Under the first <u>Teague</u> exception to non-retroactivity, the key distinction is whether the new rule is substantive or procedural. Substantive rules include those that prohibit "a certain category of punishment for a class of defendants because of their status or offense." <u>Penry v. Lynaugh</u>, 492 U.S. 302, 330 (1989) <u>abrogated on other grounds by Atkins v. Virginia</u>, 536 U.S. 304 (2002). Substantive rules apply retroactively because of the significant risk that a defendant might face a punishment that the law cannot impose upon him. <u>Schriro v. Summerlin</u>, 542 U.S. 348, 352 (2004).

In <u>Schriro v. Summerlin</u>, the Supreme Court considered whether to retroactively apply the rule announced in <u>Ring v. Arizona</u>, 536 U.S. 584, 603-09 (2002). <u>Ring</u> held unconstitutional Arizona's process for imposing the death penalty, which permitted a judge rather than the jury to make factual findings regarding the aggravating factors necessary to impose a sentence of death. The petitioner in <u>Schriro</u>, whose conviction and death sentence under the invalidated process had already become final when <u>Ring</u> was decided, sought habeas review. The Ninth Circuit granted his petition, but on appeal the Supreme Court reversed.

The Court held that Ring "did not alter the range of conduct . . . subjected to the death penalty." Instead, it changed "the range of permissible methods for determining whether a [D]efendant's conduct is punishable by death." Such rules, which "allocate decisionmaking authority . . . are prototypical procedural rules." Schriro, 542 U.S. at 353. The Court's analysis in Schriro is instructive here. The Court in Miller did not proscribe any category of punishment for any class of offender, nor did it alter the range of conduct for which the state may sentence a juvenile offender to life in prison without parole. Instead, the new rule expanded the information the state must consider before imposing the sentence. The change, while profound, is most closely analogous to the allocation of decision making responsibility addressed in Schriro, and as a result, it is procedural rather than substantive.

Although the Fourth Circuit has not yet addressed the issue of Miller's retroactivity, most courts examining the new rule in the context of habeas relief have also concluded that it is not substantive, but procedural, and hence not retroactively applicable. See Craig v. Cain, No. 12-30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013); In re Morgan, 713 F.3d 1365 (11th Cir. 2013) rehearing en banc denied, 717 F.3d 1186 (11th Cir. 2013), Johnson v. Ponton, 3:13cv404, 2013 WL 5663068 (E.D. Va. Oct. 16, 2013); Contreras v. Davis, No. 1:13cv772, 2013 WL 6504654 (E.D. Va. Dec. 11, 2013). But see State v. Mantich, ___ N.W.2d ___, 287 Neb. 320, 342 (2014) (following other states in holding Miller was a substantive change because it categorically banned imposition of "a mandatory sentence of life.").

The majority position relies most persuasively on the Supreme Court's own conclusion that the Miller decision "does not categorically bar a penalty for a class of offenders or type of crime – as, for example [the court] did in Roper or Graham." Instead, it mandates only that a sentencer "follow a certain process – considering an offender's youth and attendant

characteristics – before imposing a particular penalty." Miller, 132 S. Ct. at 2471. A rule is substantive when "it places an entire class of persons beyond the power of government to impose a certain punishment regardless of the procedure followed, not when the rule expands the range of possible sentences." In re Morgan, 713 F.3d at 1368. Unlike the Court's absolute bar on juveniles sentenced to death, Roper v. Simmons, 543 U.S. 551 (2005), or life without parole for non-homicide offenses, Graham v. Florida, 560 U.S. 48 (2010), Miller does not prohibit any category of punishment for any class of defendants. Instead, the rule in Miller expands the range of permissible sentences and requires the sentencer to consider additional facts, but it does not limit Virginia's ability to sentence juvenile offenders to life without parole. As a result, it is procedural rather than substantive. Because Miller did not announce a new substantive rule, it does not apply retroactively unless it amounts to a "watershed rule of criminal procedure."

2. **The rule in Miller is not a watershed rule of criminal procedure.**

The second Teague exception applies to watershed rules of criminal procedure which implicate the fundamental fairness and accuracy of a criminal proceeding, "implicit in the concept of ordered liberty." Beard, 542 U.S. at 417. The Supreme Court has repeatedly emphasized that the second exception applies rarely, citing as its only example the rule in Gideon v. Wainwright, 372 U.S. 335 (1963). See, Whorton v. Bockting, 549 U.S. 406, 419 (2007). To qualify as a watershed rule, the new rule "must be necessary to prevent an 'impermissibly large risk' of an inaccurate conviction," and "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Id. at 418 (quoting Schriro, 542 U.S. at 356).

The rule in Gideon created a constitutional right to counsel, at the state's expense, for any indigent defendant charged with a felony. Whorton, 549 U.S. at 419. In distinguishing Gideon from less fundamental rules, the Court has emphasized its sweeping nature, distinguishing for

example, rules which apply more narrowly including those directed exclusively at capital defendants. Beard, 542 U.S. at 417. Similarly, the rule in Miller applies to a narrow class of defendants and, as set forth above, modifies only the manner in which the state may impose the punishment of life without parole. As a result, while important, the new rule does not create an impermissibly large risk of inaccurate convictions, nor alter the "bedrock procedural elements" essential to fair proceedings. Accordingly, the rule in Miller is not a watershed rule of criminal procedure comparable to Gideon, and does not meet the second exception to non-retroactivity under Teague.

C. **The Supreme Court's application of Miller in the consolidated case of Jackson v. Hobbs does not demonstrate it intended the rule to apply retroactively in all cases.**

As an alternate basis for retroactive review, Stewart argues that the Supreme Court demonstrated its intent that the rule apply retroactively on collateral review because it applied the rule to the companion case of Jackson v. Hobbs. The opinion in Miller resolved two consolidated cases which raised the same issue, Miller, whose case was on direct appeal, and Jackson, who appealed a state court's denial of habeas relief. Stewart argues the Supreme Court's application of the new rule to Jackson implicitly recognized its retroactive application.

This argument was persuasively rejected in Johnson v. Ponton, 2013 WL 5663068 at *4. There, the Court explained that the Supreme Court's opinion in Miller was silent on retroactivity, and its recent treatment of new constitutional rules which were established initially on collateral review, rebuts the claim that retroactivity be presumed in such cases. Id., citing Chaidez v. United States, 133 S. Ct. 1103, 1113 (2013) (rejecting retroactivity of rule initially announced on collateral review in Padilla v. Kentucky, 559 U.S. 356 (2010)). Indeed, the Supreme Court's opinion in Chaidez is strong evidence against implicit waiver of the Teague analysis. Moreover,

9

Teague's limits on retroactivity may be waived by the states. Schiro v. Farley, 510 U.S. 222, 228-29. Because the state of Arkansas, from which Jackson appealed his life sentence apparently did not raise the issue of retroactivity, the Supreme Court's grant of relief to Jackson says nothing about its views on retroactivity of the new rule to Stewart. Ponton, 2013 WL 5663068 at *4; People v. Carp, 298 Mich. App. 472, 519, 828 N.W.2d 685, 713 (2012) appeal granted, 838 N.W.2d 873 (Mich. 2013).

### III. RECOMMENDATION

Because Stewart's habeas petition is time-barred and he has presented no factual basis upon which to excuse or extend the statute of limitations, the undersigned recommends that Respondent's Motion to Dismiss be GRANTED and Stewart's petition for writ of habeas corpus under 28 U.S.C. § 2254 be DISMISSED.

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk any written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of right to appeal from a judgment of

this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir.1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

March 12, 2014

11

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Jon M. Babineau
Riddick Babineau PC
109 East Main Street, Suite 413
Norfolk, VA 23510

Alice Theresa Armstrong
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

Fernando Galindo,
Clerk of Court

By: _____
Deputy Clerk

March 12, 2014